UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LIZA NAPLES,

    *Plaintiff,*          CASE NO. 13-CV-11257

*v.*          DISTRICT JUDGE THOMAS L. LUDINGTON
     MAGISTRATE JUDGE CHARLES BINDER

DELTA AIRLINES, INC.,

    *Defendant.*
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
(Doc. 10)

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED**.

## II.   REPORT

### A.   Introduction

This personal injury action was removed to this Court on the basis of diversity jurisdiction on March 21, 2013. The complaint alleges one count of negligence for Defendant's: (1) "rushing passengers onto the plane due to Defendant's desire to hurry the passengers in light of the delay in flight times"; (2) "failing to take proper precautions for the safety of its passengers, including Plaintiff, who were walking through the common areas on their way to their seats and to make sure that such pathways were clear of any debris, straps, and/or any other type of hazards that could

cause Plaintiff and/or other of her status, to trip and cause serious personal injury"; (3) "failing to make sure in light of the fact that passengers were already waiting and seated on the plane, that the aisle ways were clear of tripping hazards, including the tripping hazard that caused Plaintiff to become injured"; (4) "[i]n being in a hurry and, therefore, facilitating an accident occurrence resulting from its attempts to rush persons aboard the plane"; (5) "[i]n failing to act as a reasonable and prudent common carrier under the duty of care that exists for common carriers"; and (6) "[i]n any other manner made known through the course of discovery." (Doc. 1 at 13.)

On October 25, 2013, Defendant filed the instant motion for summary judgment. (Doc. 10.) Plaintiff responded on November 15, 2013, and Defendant replied on December 4, 2013. (Doc. 15, 19.) The motion was referred by United States District Judge Thomas L. Ludington to the undersigned magistrate judge on October 31, 2013. (Doc. 12.) Oral argument was held on December 6, 2013. Therefore, the motion is ready for Report and Recommendation.

### B.     Factual Background

The facts are largely uncontested. On November 19, 2012, Plaintiff was flying from Jacksonville, Florida, to Flint, Michigan, with a layover in Atlanta, Georgia. (Doc. 10 at 9; Doc. 15 at 6.) Since her flight from Florida arrived in Atlanta 45 minutes later than scheduled, Plaintiff and several other connecting passengers needed to run through the Atlanta terminal in order to arrive at the gate in time to board the plane to Flint. (*Id.*) In her deposition, Plaintiff stated that when she boarded the plane to Flint, the flight attendant was "on the speaker phone asking everyone to quickly take their seats because the flight was delayed." (Pl.'s Dep., Doc.13 at Pg ID 382, 393.) However, Plaintiff explained

> I don't think I clarified myself correctly when I wrote [in an incident report] about
> the rushing part to get to the flight. I believe that Delta Airlines is taking it as I was

> rushing to get onto the plane to get into my seat, which is not true. This means I was rushing from the Jacksonville plane to the plane in Atlanta. This has nothing to do with the plane. Once I got to the plane, I could breathe again, I could slow down and I could wait my turn and get to my seat.

(Pl.'s Dep, Doc. 10, Ex. 3 at Pg ID 127.) Plaintiff reiterated, "I felt rushed to get from the Jacksonville plane to the Atlanta plane, not to get onto the Atlanta plane. Once I was on the plane, everything slowed down. I was there, I was on, it was good. I was fine." (*Id*. at Pg ID 133.) When told by counsel that this was not how she described the situation in the incident report, Plaintiff responded, "Then I wrote it wrong. I'm not a writer, sir, I did the best I could." (*Id*.) Plaintiff also stated that once in the plane, she was "being pushed from behind" by "[s]ome guy with a bag, I don't know[,]" i.e., "[a]nother passenger." (*Id*. at Pg ID 149.) When Plaintiff was asked whether this man "pushed you and you fell or he didn't push you and you fell, you don't know, correct?" Plaintiff responded, "I don't know. I'm going to say no." (Doc. 15 at Pg ID 389.)

Plaintiff's assigned seat was 15B, and as she approached her seat, the woman in 15C got up and moved toward the back of the plane, to approximately row 16, to allow Plaintiff to pass into her own seat. (Doc. 10, Ex. 3 at Pg ID 134-35.) The woman in seat 15A remained in her seat the whole time. (*Id*. at Pg ID 135.) Plaintiff did not know whether either of these passengers had carry-on luggage stowed under the seats. (*Id.*) Plaintiff stated that she went from row 13 to 14 and was standing waiting in row 14 while the woman in 15C moved toward row 16. (*Id*. at Pg ID 136.) Plaintiff took a step with her right foot from row 14 toward row 15 "and then something was caught up in my left foot and I flew into the seat." (*Id.*) Plaintiff indicated that the woman in 15C had placed the armrest in an upright position, that Plaintiff had not asked her to do that, and that she hit her elbow on that armrest. (*Id*. at Pg ID 139.) Plaintiff added that she did not feel anything

3

on her leg "until I lifted it and went to actually walk into my seat. It must have been there and then when I moved my foot it tightened . . . ." (*Id*. at Pg ID 140.)

Plaintiff stated that after she fell, she did not look to see what caused her to fall but that she "just knew it was a thick strap. The woman in the aisle seat [15C] took it off [the top of ] my foot." (*Id.*) Plaintiff did not call a flight attendant, use the call button, or speak with any flight attendant and she did not remember any flight attendant offering her anything, but she did recall other passengers asking her if she was all right and offering her Motrin. (*Id*. at Pg ID 143-44.) Plaintiff did not know if any flight attendant saw her fall or not. (*Id*. at Pg ID 145.) When asked whether she told anyone about her injury while on board or exiting the plane, Plaintiff testified that "inside the plane, no, I did not talk to anyone." (Doc. 15 at Pg ID 392.) Plaintiff stated that she "waited outside the terminal to talk to someone to fill out an incident report; [but] no one came out." (*Id.*)

Plaintiff indicated that she did not contact Defendant to report the incident until nine days after the flight "[b]ecause I thought it was only my elbow that was hurt but it started feeling better, but my shoulder was getting so bad and my hand was burning so bad that I finally went to the emergency room, and at that point I knew I had to call Delta and let them know about the incident." (*Id*. at Pg ID 381.)

### C. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.

4

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary

judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### D. Analysis & Conclusions

Defendant first argues that Plaintiff has failed to set forth a federal standard of care and that the Federal Aviation Act ("FAA") and its corresponding regulations preempt the field. (Doc. 10.) Defendant further argues that even if Plaintiff had articulated a federal standard of care, Defendant did not breach any regulations. Alternatively, Defendant argues that even if a Michigan standard of care could apply, Defendant has not breached any Michigan standard and that there is insufficient evidence for Plaintiff's claim to proceed where Defendant did not cause the tripping hazard nor did it have reason to know of the alleged hazard, and where the protruding strap was open and obvious. (*Id.*)

Plaintiff argues that her claims are not preempted by federal law and that there are genuine issues of material fact regarding whether Defendant breached its duty to Plaintiff because it "should have known about the strap." (Doc. 15 at 19.)

### 1. Implied Preemption

Statutory federal preemption may be express or implied. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 554 (6th Cir. 2012). There is no express preemption provision in the Federal Aviation Act; thus, the only potential preemption is implied preemption.

Federal law implicitly preempts state law in two ways: (1) field preemption, and (2) conflict preemption. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 583-84 (6th Cir. 2013). Field preemption occurs "where 'pervasive' federal regulation 'preclude[s] enforcement of state laws on the same subject.'" *Id.* (citation omitted). Conflict preemption "nullifies state law 'to the extent that it actually conflicts with federal law.'" *Id.*

In *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784 (6th Cir. 2005)[1], the Sixth Circuit adopted the "Third Circuit's reasoning in *Abdullah [v. American Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999),] that federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." *Greene*, 409 F.3d at 795.

Recent case law from this district has held that "binding Sixth Circuit authority and pervasive authority from other circuits dictates a finding that the Federal Aviation Act [FAA] and the Federal Aviation Administration's regulatory scheme concerning airline safety and tarmac operations implicitly preempt Plaintiff's negligence claim." *Allen v. Spirit Airlines, Inc.*, ___ F. Supp. 2d ___, 2013 WL 5977974, at *4 (E.D. Mich. Nov. 12, 2013) (Rosen, J.). The court held that federal law preempted the plaintiff's negligence claim alleging that her deep vein thrombosis was caused by the airline's failure to properly train its employees and provide safe procedures when an airplane departure is delayed. Therefore, *Allen* dictates that ordinary field preemption applies to airline safety operations even while an airplane is not in-flight such that "any Michigan standard of care relating to aviation safety is preempted." *Allen*, ___ F. Supp. 2d ___, 2013 WL 5977974, at *9.

However, I note that the Third Circuit's interpretation of its own decision in *Abdullah* has concluded to the contrary. *See Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 126, 131 (3d Cir. 2010). In *Elassaad*, the court held that the field preemption discussed in *Abdullah* applied only to "in-flight safety" and that since the FAA and regulations did not specifically regulate the disembarkation of passengers, which occurs only after the plane has landed, taxied to the gate, and

---

[1] The court held that federal law preempted a negligence claim against an aircraft manufacturer for breach of duty to warn of a gyroscope's manufacturing defect.

come to a complete stop, the FAA did not preempt state law standards of care regarding disembarkation.

I therefore suggest that either position, that federal preemption applies to only in-flight safety or that it applies to all in-plane safety, may be supported. I further find Chief Judge Rosen's analysis in *Allen* persuasive and therefore conclude that the federal standard of care preempts the field of in-plane as well as in-flight safety. As a result, I suggest that the federal standard of care should preempt any state standards.

    **2.**    **Ordinary Versus Complete Preemption**

Even if field preemption applies, the existence of federal preemption does not necessarily equate to a finding that state law causes of action are unavailable since only the standard of care is preempted. While "federal law establishes the applicable standards of care in the field of air safety," "[n]evertheless, we find that plaintiffs may recover damages under state and territorial remedial schemes." *Abdullah*, 181 F.3d at 368. "Thus, *Abdullah* holds that state law remedies remain available, despite ordinary preemption of the standard of care." *In re Air Crash at Lexington, Ky*, 486 F. Supp. 2d 640, 648 (E.D. Ky. 2007); *accord Allen*, ___ F. Supp. 2d ___, 2013 WL 5977974, at *3. Therefore, ordinary preemption is generally used as a defense to limit the standard of care owed to plaintiffs by federal standards.

"In contrast to ordinary preemption, 'complete preemption' involves preemption of state substantive law *as well as* state causes of action." *Air Crash at Lexington*, at 648. Therefore, "[c]omplete preemption converts a state claim into one stating a federal claim for purposes of removal jurisdiction." *Id.* Complete preemption is rare and has only been applied to a very few federal statutes, i.e., Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1001 *et seq.*, Section 502(A) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*,

and Section 30 of the National Bank Act, 12 U.S.C. §§ 85, 86. *Id.* at 649 (citing *Roddy v. Grand Trunk Western Railroad, Inc.*, 395 F.3d 318, 323 (6th Cir. 2005)).

Several courts have held that the Federal Aviation Act[2] does not provide complete preemption such that removal jurisdiction would be proper[3] or that state law claims, such as negligence, would be barred as preempted. *See, e.g., Rosen v. Continental Airlines, Inc.,* No. 10-5859 (WJM), 2011 WL 1467209, at *3-5 (D.N.J. Apr. 18, 2011) (FAA and ADA); *Washington Consulting Group, Inc. v. Raytheon Technical Servs.*, 760 F. Supp. 2d 94, 108 (D.D.C. 2011) (FAA); *In re Air Crash Near Clarence Center, NY,* No. 09-md-2085, 2010 WL 5185106, at *10 (W.D.N.Y. Dec. 12, 2010) (FAA and ADA).

I suggest that the reasoning and conclusions of these courts is persuasive and that the FAA and its attendant regulations do not completely preempt the field but rather provide ordinary preemption. I therefore suggest that Plaintiff's state law negligence claim is not barred as preempted.

### 3. Application of Summary Judgment Standards to Plaintiff's Negligence Claim Using the Federal Standard of Care

Should the court conclude that ordinary field preemption applies, as did the district court in *Allen*, I suggest that Defendant's motion for summary judgment should be granted using the federal standard of care. There is some support for Defendant's argument that Plaintiff's failure to plead breach of a federal standard of care is fatal to the cause of action. *See Landis v. U.S. Airways, Inc.*, No. 07-1216, 2008 WL 728369, at *3 (M.D. Pa. 2008). However, I suggest that even

---

[2] 49 U.S.C. § 40101 *et seq.*

[3] I note that Defendant's Notice of Removal relies on diversity jurisdiction, not complete preemption, for this Court's assertion of subject matter jurisdiction over the instant cause of action. (Doc. 1.)

9

if this failure is not fatal and Plaintiff's generalized reference to various duties could be construed to encompass the federal standard, nevertheless, summary judgment is appropriate.

Under 14 C.F.R. § 91.13, "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." I suggest that by its own language, this standard applies only to conduct that relates to the operation of the airplane not the tidiness of the aisles. In addition, this standard is applicable only to instances of conduct that create a serious danger, not the mere possibility of an injury due to falling luggage or protruding luggage. *See Allen v. American Airlines, Inc.*, 301 F. Supp. 2d 370, 376 (E.D. Pa. 2003) (holding that passenger injured by falling luggage does not violate § 91.13 since it is reserved only for egregious conduct where the potential for harm is incontestably high, citing cases where the pilot flew into known icy conditions or the pilot took off with only half runway visibility or where a pilot allowed his co-pilot to operate under the influence of alcohol). I therefore suggest that Defendant's motion for summary judgment should be granted.

It should be noted that the instant injury occurred before the flight attendant's regulatory duty to check the status of stowed baggage arose. Under 14 C.F.R. § 121.589(b) and (c), once all passenger entry doors are closed in preparation for push-back from the gate or taxi onto the runway, "at least one required crewmember" must "ha[ve] verified that each article of baggage is stowed in accordance with this section" such that each article is stored in a baggage or cargo compartment or under a passenger seat. Had the injury in this case occurred after the flight attendant should have checked and verified that each article of baggage was properly stowed, the result might be different. *See Barrera v. American Airlines*, No. 98-2685, 2002 WL 1059160 (S.D.N.Y. May 24, 2002). However, where, as here, the injury occurred while passengers were still

finding and taking their seats and before any duty to prepare for push-back or taxiing arose, I suggest that summary judgment is appropriate under the federal standard of care.

To the extent that Plaintiff seeks to impose an additional duty that Defendant "should have known about the strap" and impliedly should have assured that luggage was properly stowed before the regulations require this task to be done (Doc. 15 at 19), I suggest that such an attempt cannot create a cognizable duty. Where the "federal regulatory scheme . . . is silent[,]" a plaintiff cannot seek to impose obligations that are "[n]oticeably absent" from the federal standard. *Allen*, 2013 WL 5977974, at *9 (granting summary judgment where no federal standards required airlines to train employees to assess the potential for injuries caused by a delay, such as deep vein thrombosis).

**4.    Application of Summary Judgment Standards to Plaintiff's Negligence Claim using the Michigan Standard of Care**

Should the court find that the reasoning employed by the Third Circuit in *Elassaad* is more persuasive that the reasoning in *Allen*, and, thus, that the Michigan standard of care is relevant and not preempted, I suggest that the result would be the same. In order to establish a prima facie case of negligence in Michigan, a plaintiff must prove: (1) that defendant owed a duty to plaintiff; (2) that defendant breached that duty; (3) that defendant's breach of duty was a proximate cause of plaintiff's damages; and (4) that plaintiff suffered damages. *Terry v. Detroit*, 226 Mich. App. 418, 424, 573 N.W.2d 348 (1997).

Under Michigan law, "'[n]egligence is not found to exist unless an actor who is under a duty to act fails to act after he has perceived or should have perceived an unreasonable risk of harm to another.'" *Njoku v. Northwest Airlines, Inc.* 806 F. Supp. 2d 1022 (E.D. Mich. 2011) (quoting *Samson v. Saginaw Professional Bldg., Inc.*, 393 Mich. 393, 224 N.W.2d 843 (1975)). "Whether

11

circumstances exist causing a defendant's duty of care to arise, is a threshold question for the trial court to decide." *Id.* (citing *Riddle v. McLouth Steel Products Corp.*, 440 Mich. 85, 95, 485 N.W.2d 676 (1992)).

### a. Premises Liability

In *Njoku*, the court found that the defendant airline did not owe any legal duty to the plaintiff beyond providing a wheelchair where that was all she requested (pursuant to a WCHR designation), despite her need for assistance to get in and out of her seat and up and down any steps (which would be a WCHC designation). *Njoku,* 806 F. Supp. 2d at 1028. In addition, the court held that the plaintiff's premises liability claim failed because "a property owner's duty of care does not extend to protecting an invitee from open and obvious dangers" and "the gray steel plate, which contrasts with the black carpet of the jet bridge" was "either an open and obvious danger or simply not a danger at all." *Njoku,* 806 F. Supp. 2d at 1029.

To the extent that Plaintiff has raised a claim based on a premises liability theory, I suggest that the "thick strap" Plaintiff testified that she tripped on would be an open and obvious danger and, thus, that any such claim would fail.

### b. Common Carrier Liability to Protect

Under Michigan common law, "there is no duty that obligates one person to aid or protect another." *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 499, 418 N.W.2d 381 (1988). However, a common carrier-passenger relationship is one that creates a duty to exercise due care. *Dawe v. Dr. Reuven Bar-Levav & Assoc., P.C.,* 485 Mich. 20, 26 n.3, 780 N.W.2d 272 (2010). "The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in

control because he is best able to provide a place of safety." *Id.* Therefore, the duty arises when passengers may be in "danger" and the passengers are under the airline's "control." *Garza v. Northwest Airlines, Inc.*, 305 F. Supp. 2d 777, 782 (E.D. Mich. 2004).

The duty owed to its passengers is "the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier." *Frederick v. Detroit*, 370 Mich. 425, 437, 121 N.W.2d 918 (1963). However, "a common carrier is not an insurer of the passengers' safety, and does not have a duty to protect passengers from risks ordinarily present in the mode of conveyance employed." *Mosby v. Greyhound Lines, Inc.*, No. 06-13157, 2007 WL 4572049, at *7 (E.D. Mich. Dec. 27, 2007).

As to causation, a plaintiff "must present substantial evidence from which the jury may conclude that more likely than not, but for defendant's conduct, the plaintiff's injuries would not have occurred." *Wilson v. Alpena Co. Rd. Comm'n,* 263 Mich. App. 141, 150, 687 N.W.2d 380 (2004).

I suggest that the presence of a thick strap in the aisle of an airplane while passengers are finding and taking their seats is neither a danger caused by Defendant nor a danger under Defendant's control. *See Hogan v. Northwest Airlines, Inc.*, No. 11-cv-14888, 2013 WL 607852, at *4-5 (E.D. Mich. Feb. 19, 2013) (granting airline's motion to dismiss on common carrier state negligence claim because the plaintiff was not in danger when airline wheelchair attendant provided her with assistance and the plaintiff was not under the control of the airline attendant when she fell after a TSA agent required her to leave the wheelchair and walk through the metal detector); *Veal v. Greyhound Lines, Inc.*, No.10-cv-12377, 2012 WL 1060148, at *1 (E.D. Mich. Mar. 29, 2012) (granting summary judgment where the plaintiff slipped and fell on the steps while exiting a bus because she presented no evidence that the defendant breached a duty or that the

13

circumstances presented an unreasonable risk of harm); *Loper v. Doe*, No. 252675, 2005 WL 1185586, at *3 (Mich. Ct. App. May 19, 2005) (granting summary judgment because limousine driver "had no reason to think that leaving plaintiff in the limousine with a party going on nearby would pose a risk of harm to plaintiff").

I therefore suggest that summary judgment should be granted on this ground.

### c.     Common Carrier Duty to Provide Aid

"A common carrier also has a duty to its passengers to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." *Loper v. Doe*, No. 252675, 2005 WL 1185586, at *4 (Mich. Ct. App. May 19, 2005) (citing *Mason v. Royal Dequindre, Inc.*, 455 Mich. 391, 397 n.2, 566 N.W.2d 199 (1997)).

In the instant case, I suggest that Plaintiff has failed to come forward with any evidence that Defendant knew or had reason to know of her injury. Plaintiff's own testimony establishes that she did not call a flight attendant, did not use the call button, nor did she speak with any flight attendant. (Doc. 10, Ex. 3 at Pg ID 143-44.) Plaintiff did not know if any flight attendant saw her fall or not. (*Id*. at Pg ID 145.) When asked whether she told anyone about her injury while on board or exiting the plane, Plaintiff testified that "inside the plane, no, I did not talk to anyone." (Doc. 15 at Pg ID 392.) Plaintiff indicated that she did not contact Defendant to report the incident until nine days after the flight. (*Id*. at Pg ID 381.) I therefore suggest that Defendant did not know or have reason to know of Plaintiff's injury. Accordingly, I suggest that no duty arose after Plaintiff was injured and that Defendant is entitled to summary judgment on this ground as well.

### E.     Conclusion

For the reasons stated above, I suggest that Defendant's motion for summary judgment should be granted.

**III.  REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                 s/ Charles E Binder
                                                 CHARLES E. BINDER
Dated: December 30, 2013                  United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 30, 2013                   By     s/Patricia T. Morris
                                                  Law Clerk to Magistrate Judge Binder